## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDE PALMER, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| NCB MANAGEMENT SERVICES, INC. and BANK OF AMERICA CORPORATION, | |
| Defendants. | |

Plaintiff Jude Palmer ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendants NCB Management Services ("NCB") and Bank of America Corporation ("BOA"), collectively ("Defendants"), based upon personal knowledge with respect to Plaintiff and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## <u>INTRODUCTION</u>

1.      This class action arises out of the recent data breach (the "Data Breach") involving NCB Management Services, which collected and stored certain personally identifiable information ("PII") of the Plaintiff and the putative Class Members, all of whom have PII on NCB's servers.

2.      BOA negligently chose to sell Plaintiff and Class Members past due accounts to NCB, a national debt buyer, without ensuring that NCB had adequate security safeguards in place to prevent and protect against a data breach. In its negligent choice of a bad vendor, BOA inadvertently assisted in the recent data breach that collected and stored certain personally identifiable information ("PII") of the Plaintiff and the putative Class Members.

1

3.      According to NCB, the PII compromised in the Data Breach included highly-sensitive information including but not limited to: first and last names, dates of birth, Social Security numbers, driver's license numbers, financial account information, routing and account numbers, employment position and pay amount and/or account status.[1]

4.      Social Security numbers are particularly valuable to criminals. This information can be sold and traded on the dark web black market. The loss of a Social Security number is particularly troubling because it cannot be easily changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

5.      The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PII. Inexplicitly, Defendant NCB has acknowledged that the cybersecurity attack occurred on February 1, 2023, but it has only recently begun contacting Class Members.

6.      According to the Office of the Maine Attorney General, whom Defendant NCB was required to notice, the Data Breach has affected 494,969 individuals.[2]

7.      Plaintiff brings this class action lawsuit individually as well as on behalf of all those similarly situated to address Defendants' inadequate safeguarding of Class Members' PII that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party.

---

[1] https://apps.web.maine.gov/online/aeviewer/ME/40/65d544dc-79b0-437c-a7f8-757ffec624af/d7667acf-0b40-44c3-a168-5efbdd973ca0/document.html (last accessed April 5, 2023).
[2] https://apps.web.maine.gov/online/aeviewer/ME/40/65d544dc-79b0-437c-a7f8-757ffec624af.shtml (last accessed April 5, 2023).

## PARTIES

**Plaintiff**

8.      Plaintiff Jude Palmer is an adult individual and citizen of the State of Georgia who resides in Lawrenceville, Georgia.

9.      In September 2020, Plaintiff Palmer opened a credit card account with Defendant BOA. Plaintiff closed this credit account with BOA in August 2021.

10.      On April 4, 2023, Plaintiff was notified by Defendant NCB via letter of the Data Breach and of the impact to his PII.

11.      As a result of Defendants' conduct, Plaintiff suffered actual damages including, without limitation, time and expenses related to monitoring their financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of their personal information, and other economic and non-economic harm. Plaintiff and Class Members will now be forced to expend additional time to review their credit reports and monitor their financial accounts and medical records for fraud or identify theft – particularly since the compromised information may include Social Security numbers.

**Defendants**

12.      Defendant NCB Management Services is a provider of Accounts Receivable Management and Call Center Management solutions, as well as a national debt buyer, with its principal place of business and headquarters at 1 Allied Dr, Trevose, Pennsylvania 19053.

13.      Defendant Bank of America Corporation is an American multinational investment bank and financial services holding company, with its principal place of business and headquarters at 100 North Tryon Street, Charlotte, North Carolina 28255.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendants, there are more than 100 Members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Plaintiff is a resident of the state of Georgia. Defendant is a resident of the Commonwealth of Pennsylvania by virtue of having its headquarters located in Trevose, Pennsylvania.

15.    This Court has personal jurisdiction over NCB because NCB maintains its principal place of business in Pennsylvania and conducts substantial business in Pennsylvania and in this district through its principal place of business; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District and purposely availed itself of the Courts in this District.

16.    This Court has personal jurisdiction over BOA because it is authorized to and does conduct substantial business in this District, engaged in the conduct at issue herein from and within this District, and otherwise has substantial contacts with this District and purposely availed itself of the Courts in this District.

17.    Venue is proper under 28 U.S.C. §1391(b)(1) and (2) because NCB resides in this district, and this district is where a substantial part of the acts, omissions, and events giving rise to Plaintiffs' claims occurred. Further, venue is proper for BOA because this district is where a substantial part of the acts, omissions, and events giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

18.     Plaintiff and the proposed Class are consumers of Defendants. Defendant NCB is a national debt buyer in Trevose, Pennsylvania. Defendant BOA is a multinational investment bank and financial services holding company in Charlotte, North Carolina.

19.     Defendant BOA failed to verify and affirm that Defendant NCB had appropriate security protection measures in place. In failing to verify and affirm the existence of appropriate security and protection measures, BOA negligently made the decision to sell their consumer's information to Defendant NCB as a national debt buyer.

20.     As noted above, Plaintiff brings this class action against Defendants for Defendants' failure to properly secure and safeguard personally identifiable information, for failing to comply with industry standards to protect and safeguard that information, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other members of the class that such information had been compromised.

### NCB Management Services Unsecure Data Management and Disclosure of Data Breach

21.     Plaintiff and Class Members provided their PII to Defendant NCB with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

22.     Plaintiff and Class Members' PII was provided to Defendant NCB in conjunction with the type of work Defendants do as a financial institution and national debt buyer.

23.     However, Defendant NCB failed to secure the PII of the individuals that provided it with this sensitive information.

24.     Defendant NCB's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date they disclosed the incident.

25.     According to Defendant NCB, "an unauthorized party gained access to NCB's systems" on February 1, 2023. This unauthorized activity was discovered on February 4, 2023.[3] Defendant NCB said that "unauthorized activity of NCB's systems has been stopped."[4] In addition, it consulted with "federal law enforcement authorities" to assist its investigation, but notably omitted from its notice any change to its data security or retention policies.[5] Though the breach was discovered on February 4, 2023, Defendant NCB reported the breach to the Office of the Maine Attorney General on March 24, 2023, over a month after the initial discovery. that the breach was confirmed on March 8. 2023 – in contradiction to its own letter.[6]

26.     Despite being aware of the breach on February 4, 2023, Defendant NCB failed to take any action to notify Plaintiff or other class members of this breach until at least March 24, 2023.

27.     Defendant failed to take appropriate or even the most basic steps to protect the PII of Plaintiff and other class members from being disclosed.

**Plaintiff and the Class Have Suffered Injury as a Result of Defendants Data Mismanagement**

28.     As a result of Defendants' failure to implement and follow even the most basic security procedures, Plaintiff's and Class Members' PII has been and is now in the hands of unauthorized individuals, which may include thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiff and other Class Members now face an increased risk of identity theft, particularly due to the dissemination of their Social Security

---

[3] See n. 2, *supra*.
[4] *Id.*
[5] *Id.*
[6] *Id.*, *see also* n. 2, *supra*.

Number, and will consequentially have to spend, and will continue to spend, significant time and money to protect themselves due to Defendant NCB's Data Breach.

29.    Plaintiff and other class members have had their most personal, sensitive and PII disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

30.    Plaintiff and class members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety and fear, as they will be at risk for falling victim for cybercrimes for years to come.

31.    PII is a valuable property right.[7] The value of PII as a commodity is measurable.[8] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[9] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[10] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

---

[7] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION AND COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_ The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible..."). (last accessed April 5, 2023).
[8] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192 (last accessed April 5, 2023).
[9] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last accessed April 5, 2023).
[10] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last accessed April 5, 2023).

32.     As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

33.     Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[14] According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[15]

---

[11] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed April 5, 2023).

[12] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed April 5, 2023).

[13] Adam Greenberg, *Health insurance credentials fetch high prices in the online black market*, SC Magazine (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market (last accessed April 5, 2023).

[14] *In the Dark*, VPNOverview.com, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed April 5, 2023).

[15] *See Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, FBI Cyber Division (Apr. 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf (last accessed April 5, 2023).

34.     Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[16]

35.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

36.     Indeed, cyberattacks against the financial industry have been increasing dramatically over the last five years with the Federal Bureau of Investigation ("FBI") warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[17]

37.     Plaintiff and members of the Class, as a whole, must immediately devote time, energy, and money to: 1) closely monitor their financial statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear

---

[16] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560 (last accessed April 5, 2023).
[17] Gordon M. Snow, *Statement before the House Financial Services Committee, Subcommittee on Financial Institutions and Consumer Credit*, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last accessed April 5, 2023).

phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

38.     Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendants' conduct. Further, the value of Plaintiff's and Class members' PII has been diminished by its exposure in the Data Breach.

39.     As a result of Defendants' failures, Plaintiff and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their PII.

40.     Plaintiff and the Class suffered actual injury from having PII compromised as a result of Defendants' negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value of their PII, a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

41.     For the reasons mentioned above, Defendants' conduct, which allowed the Data Breach to occur, caused Plaintiff and members of the Class these significant injuries and harm.

42.     Plaintiff brings this class action against Defendants for Defendants' failure to properly secure and safeguard PII, and for failing to ensure that proper security measures were in place to protect PII, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other class members that their PII had been compromised.

43.     Plaintiff, individually and on behalf of all other similarly situated individuals, alleges claims in negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violation of the Georgia Deceptive Practices Act.

10

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

45.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons in the United States whose PII was compromised in the Data Breach detected by NCB on or about February 1, 2023. (the "Nationwide Class")

46.    In addition, or in the alternative, to the Nationwide Class, Plaintiff also proposes the following Georgia State Class:

> All persons in the state of Georgia whose PII was compromised in the Data Breach detected by NCB on or about February 1, 2023 (the "Georgia Class")

47.    Excluded from the Classes are Defendants' officers and directors, and any entity in which Defendants' have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants'. Excluded also from the Classes are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

48.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

49.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.    <u>Numerosity</u>: The Members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. NCB reported that approximately 494,000 individuals' information was exposed in the Data Breach.

51.    <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia:*

a.    Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e.    Whether Defendants owed a duty to Class Members to safeguard their PII;

f.    Whether Defendants breached its duty to Class Members to safeguard their PII;

g.    Whether computer hackers obtained Class Members' PII in the Data Breach;

h.    Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

i.    Whether Defendants' conduct was negligent;

j.    Whether Defendants' acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

k.      Whether Defendants' acts breached an implied contract they formed with Plaintiff and the Class Members;

l.      Whether Defendants violated the Federal Trade Commission Act ("FTC Act");

m.     Whether Defendants were unjustly enriched to the detriment of Plaintiff and the Class;

n.      Whether Defendants failed to provide notice of the Data Breach in a timely manner; and

o.      Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

52.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of themself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

53.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed Members of the Class, had their Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

54.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class in that they have no interests adverse to, or conflicting with, the Class they seek to represent. Plaintiff has retained counsel with

substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

55.    <u>Superiority:</u> A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants', so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

56.    Finally, all members of the proposed Classes are readily ascertainable. Defendants' have access to Class Members' names and addresses affected by the Data Breach. At least some Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant NCB.

## CAUSES OF ACTION
## COUNT I

### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

71.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     BOA owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control when choosing to sell Plaintiff and other Class Members' debts.

73.     BOA knew, or should have known, the risks of selling Plaintiff and other Class Members' debts to NCB without ensuring that NCB had adequate security safeguards in place to prevent and protect against a data breach.

74.     BOA breached their duty by failing to exercise reasonable care in selling Plaintiff and other Class Member's debts to NCB without ensuring that NCB had adequate security safeguards in place to prevent and protect against a data breach.

75.     But for BOA's negligent conduct in choosing to sell Plaintiff and other Class Member's debts to a vendor without ensuring that NCB had adequate security safeguards in place to prevent and protect against a data breach, their PII would not have been compromised.

76.     NCB owed a duty to Plaintiff and all other Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

77.     NCB knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class members' PII and the importance of maintaining secure systems. NCB knew, or should have known, of the vast uptick in data breaches in recent years. NCB had a duty to protect the PII of Plaintiff and Class Members.

78.     Given the nature of NCB's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, NCB should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which NCB had a duty to prevent.

79.     NCB breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control,

direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

80.     It was reasonably foreseeable to NCB that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

81.     But for NCB's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

82.     As a result of both Defendants above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) actual or attempted fraud.

## COUNT II
## NEGLIGENCE PER SE
### (On Behalf of Plaintiff and the Class)

83.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

84.    BOA's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as BOA, of failing to employ reasonable measures to protect and secure PII.

85.    BOA violated Section 5 of the FTCA by failing to use reasonable measures in choosing a vendor to sell Plaintiff and all other Class Members' debts to without ensuring that NCB had adequate security safeguards in place to prevent and protect against a data breach, which included their PII, and not complying with applicable industry standards. BOA's conduct was particularly unreasonable given the nature and amount of PII it sold, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and other Class members.

86.    BOA's violations of Section 5 of the FTCA constitutes negligence *per se*.

87.    NCB's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as NCB, of failing to employ reasonable measures to protect and secure PII.

88.    NCB violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and all other Class members' PII and not complying with applicable industry standards. NCB's conduct was particularly unreasonable given the nature and amount of PII it

obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

89.    NCB's violations of Section 5 of the FTCA constitutes negligence per se.

90.    Plaintiff and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

91.    The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against.

92.    It was reasonably foreseeable to Defendants that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

93.    The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Defendants' violations of Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vi) actual or attempted fraud.

<u>COUNT III</u>
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class)**

94.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95.    Plaintiff and Class members either directly or indirectly gave Defendants their PII in confidence, believing that NCB – a national debt buyer – and BOA – a financial holding services company – would protect that information. Plaintiff and Class members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and Class members' PII created a fiduciary relationship between Defendants and Plaintiff and Class Members. In light of this relationship, Defendants must act primarily for the benefit of its customers and students, which includes safeguarding and protecting Plaintiff's and Class Members' PII.

96.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. Defendants breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' PII, failing to comply with the data security guidelines set forth by Section 5 of the FTCA, and otherwise failing to safeguard the PII of Plaintiff and Class Members it collected.

97.    As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII

which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

98.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein. This claim is pled in the alternative to the implied contract claim pursuant to Fed. R. Civ. P. 8(d)(2).

99.    Plaintiff and Class Members conferred a monetary benefit upon Defendants in the form of monies paid for financial services or other services.

100.    Defendants accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendants also benefitted from the receipt of Plaintiff's and Class Members' PII.

101.    As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

102.    Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws as well as industry standards.

20

103.    Defendants should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT V**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

104.    Plaintiff realleges and incorporates by reference all allegations of the preceding factual allegations as though fully set forth herein.

105.    Defendants required Plaintiff and Class Members to provide, or authorize the transfer of, their PII in order for Defendants to provide services. In exchange, Defendants entered into implied contracts with Plaintiff and Class Members in which Defendants agreed to comply with its statutory and common law duties to protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

106.    Plaintiff and Class Members would not have provided their PII to Defendants had they known that Defendants would not safeguard their PII, as promised, or provide timely notice of a data breach.

107.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

108.    Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

109.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendants' breach of its implied contracts with Plaintiff and Class Members.

21

## COUNT VI
## VIOLATION OF THE
## GEORGIA DECEPTIVE PRACTICES ACT
### (Ga. Code Ann. §§ 10-1-370 *Et Seq.)*
### (On Behalf of Plaintiff and the Georgia Subclass)

110. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

111. Defendants, Plaintiff, and the Class are "persons" within the meaning of the Georgia Deceptive Trade Practices Act ("Georgia DTPA"), Ga. Code Ann. § 10-1-370(5).

112. The Georgia DTPA states the following at Ga. Code Ann. § 10-1-372:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
> . . . (5) Represents that goods or services have . . .characteristics, . . . uses, [or] benefits . . . that they do not have; . . . (7) Represents that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . [or] (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

113. Defendants engaged in deceptive trade practices in violation of Ga. Code Ann. § 10-1- 372(a)(5), (7), and (12) by, among other things:

(a)     Omitting and concealing the material fact that it did not employ reasonable measures to secure consumers' PII. Defendants could and should have made a proper disclosure to consumers (including its customers), by any means reasonably calculated to inform consumers of the inadequate data security; and

(b)     Making implied or implicit representations that its data security practices were sufficient to protect consumers' PII. Defendant NCB acquired consumers' PII from Defendant BOA. In doing so, Defendants made implied or implicit representations that its data security practices were sufficient to protect consumers' PII. By virtue of accepting Plaintiff's PII during from Defendant BOA, Defendant NCB implicitly represented that its data security processes were sufficient to safeguard the PII.

114. The Georgia DTPA states that "[i]n order to prevail in an action under this part, a complainant need not prove . . . actual confusion or misunderstanding." Ga. Code Ann. § 10-1- 372(b).

115.    The Georgia DTPA further states: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required." Ga. Code Ann. § 10-1-373(a).

116.    While Defendant NCB provided notice of the Date Breach, Defendant has not provided sufficient details regarding the full scope of the Data Breach or any details related to the remedial measures that it has taken to improve and more fully safeguard Plaintiff's and Class Members' data from future compromise. As a result, Plaintiff, Class Members, and Defendants' customers remain uninformed and confused as to the adequacy of Defendant NCB's data security and Defendant's ability to protect the PII entrusted to it. Without adequate improvements, Plaintiff and Class Members' data remains at an unreasonable risk for future compromise.

117.    Defendant NCB, through its omissions and Notice of Data Breach, continues to represent and imply that its data security measures are adequate to protect the PII of Plaintiff and Class Members. Such continued representations and implications, without disclosure of the full scope of the Data Breach or remedial enhancements, place Plaintiff and Class Members at a future risk of harm, as Plaintiff, Class Members, and Defendants clients are not fully informed as to whether Defendant NCB's data security measures have been improved since the Data Breach. By all available measures, Defendants' data systems have not been adequately improved, and the Plaintiff and Class Members remain at an unreasonable risk from future cyberattacks.

118.    Plaintiff and Class Members, therefore, are entitled to the injunctive relief sought herein because, among other things, Defendants continue to retain their PII, future cyber-attacks targeting the same data are foreseeable, and Defendants have not provided sufficient notice identifying any remedial measures that will protect the data from future attack. Moreover, absent

injunctive relief, Defendants will continue to misrepresent and imply that Defendant NCB's data systems are adequate to protect the PII of Plaintiff and Class Members from future cyberattacks without providing any firm details or basis to support these representations.

119.    The Georgia DTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2). Defendants willfully engaged in deceptive trade practices knowing them to be deceptive. Defendants knew or should have known that Defendant NCB's data security practices were deficient. This is true because, among other things, Defendants were aware that entities responsible for collecting and maintaining large amounts of PII, including Social Security numbers and financial information, are frequent targets of sophisticated cyberattacks. Defendants knew or should have known that its data security practices were insufficient to guard against those attacks.

120.    The Georgia DTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b). Plaintiff and Class Members are entitled to recover their costs of pursuing this litigation.

121.    As a result of Defendants' deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and non-monetary damages, as alleged herein.

122.    As a further result of Defendants' deceptive acts and practices, Plaintiff and Class Members are at future risk of injury as a result of Defendants' misrepresentations as to its data security practices and the lack of information Defendants have provided regarding any enhancements to its data security.

123.    Concurrent with the filing of this Complaint, Plaintiff sent notice to Defendant

pursuant to O.C.G.A. § 10-1-399(b) indicating the specific provisions of the Georgia DTPA has violated or is violating. Although a cure is not possible under the circumstances, if (as expected) Defendant is unable to cure or does not cure the violations within 30 days, Plaintiff will amend this Complaint to pursue actual or statutory damages as permitted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, pray for judgment as follows:

a.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class and Subclass;

b.    For equitable relief enjoining Defendants' from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

c.    For equitable relief compelling Defendants' to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

d.    For an order requiring Defendants to pay for not less than seven years of credit monitoring services for Plaintiff and the Class(es);

e.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f.    For an award of punitive damages, as allowable by law;

g.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h.    Pre and post-judgment interest on any amounts awarded; and

i.    Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated: April 6, 2023                    Respectfully Submitted By:


   */s/ Benjamin F. Johns*


**SHUB & JOHNS LLC**
Jonathan Shub (PA I.D. #53965)
Benjamin F. Johns (PA I.D. #201373)
Samantha Holbrook (PA I.D. #311829)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
T: (610) 477-8380
F: (856) 210-9088
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

26